SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JAMES M. CHADWICK, Cal. Bar No. 157114
jchadwick@sheppardmullin.com
HAROLD J. MILSTEIN, Cal. Bar No. 145074
hmilstein@sheppardmullin.com
CHELSEAA BUSH, Cal. Bar No. 228771
cbush@sheppardmullin.com
TENAYA RODEWALD, Cal. Bar No. 248563
trodewald@sheppardmullin.com
379 Lytton Avenue
Palo Alto, California 94301
Telephone: 650-815-2600
Facsimile: 650-815-2601

Attorneys for Plaintiff
ALIGN TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GARY YENIN, an individual, d/b/a Aligninline; ALIGNINLINE, a business entity of unknown form and origin; and Does 1 through 25, inclusive,<br><br>Defendants. | Case No. 5:14-cv-3718<br><br>**COMPLAINT FOR UNFAIR COMPETITION AND FALSE ENDORSEMENT; TRADEMARK INFRINGEMENT; CYBERSQUATTING; AND TRADEMARK DILUTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Align Technology, Inc. ("Align") alleges the following:

**NATURE OF THE CASE**

1.     This is an action seeking damages and injunctive relief for (1) unfair competition and false endorsement (15 U.S.C. §§ 1114(1), 1125(a)); (2) trademark infringement (15 U.S.C. §§ 1114(1), 1125(a)); (3) cybersquatting (15 U.S.C. § 1125(d)); and (4) trademark dilution (15 U.S.C. § 1125(c)).

**JURISDICTION AND VENUE**

2.     The causes of action in the Complaint arise under the Lanham Act, 15 U.S.C. § 1051, *et seq*.  This Court has original subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

3.     This Court has personal jurisdiction over Defendants in this action and venue is proper in this judicial district because, as alleged below: (a) the harm caused to Plaintiff by the acts and omissions of Defendants was targeted by Defendants at Plaintiff and designed to impact Plaintiff, which has its principal place of business located in this judicial district; and (b) a substantial part of the acts or omissions giving rise to the asserted claims occurred or had effects in this judicial district.

4.     Assignment to the San Jose Division of the Court is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions giving rise to the claims alleged occurred or had effects in Santa Clara County, California.

**THE PARTIES**

5.     Align is a Delaware corporation with a place of business at 2560 Orchard Parkway, San Jose, California 95131.  Align is the owner of the trademark and trade name ALIGN® and the famous trademark INVISALIGN® which it uses in connection with its well-known dental and orthodontic goods and services.

6.     Defendant Gary Yenin ("Yenin") is an individual doing business under the name Aligninline.  On information and belief, Yenin maintains a place of business at 8713 Dandelion Trail, Austin, Texas 78745, and also maintains a laboratory at 260 65th Street, Suite 6, Brooklyn,

///

New York where he manufactures dental appliances. On information and belief, Yenin provides dental and orthodontic goods and services in connection with his Aligninline business.

7. Defendant Aligninline is a business entity of unknown form and origin with a place of business at 8713 Dandelion Trail, Austin, Texas 78745. On information and belief, Yenin is the sole proprietor of Aligninline, and/or Yenin directs and controls the activities of Aligninline.

8. On information and belief, Defendants Does 1-25 are individuals or entities whose activities with respect to the events described herein are directed and controlled by Yenin and/or Aligninline, or who are acting in concert with Yenin and/or Aligninline in taking the actions described herein, and whose true names and identities are unknown to Align at this time. Yenin, Aligninline, and Does 1-25 are collectively referred to as "Defendants."

9. On information and belief, all Defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint ventures and employees of all other defendants, and all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization, and ratification of their co-defendants.

## FACTUAL BACKGROUND

### Align's Business And Marks

10. Align is a pioneer in the field of orthodontics. It has designed, manufactured, and marketed the INVISALIGN® system, the world's leading invisible orthodontic product, which consists of a combination of proprietary 3D modeling software, cutting edge custom manufacturing technology, and clear, removable dental appliances that are used to straighten teeth, either as comprehensive orthodontic treatment or as a component of cosmetic dental work.

11. Align works with doctors, dentists, and orthodontists in over 60 countries around the world. Align has trained more than 86,000 doctors in its technology, started over 2.5 million patients in treatment, and manufactured more than 148 million unique INVISALIGN aligners.

12. Align was founded in 1997 and began using ALIGN as its trade name at that time. It went public on the NASDAQ market under the trading symbol ALGN in 2001.

13. Align began using the ALIGN and INVISALIGN Trademarks in interstate commerce in connection with clear orthodontic appliances no later than September 1999. Align has continuously used the ALIGN and INVISALIGN Trademarks in interstate commerce in connection with its products and services since that time.

14. Align owns the following United States trademark registrations for INVISALIGN or for marks comprising or containing the term ALIGN:

| **Mark** | **Registration No.** | **Registration Date:** |
|---|---|---|
| ALIGN | 3,181,043* | December 5, 2006 |
| ALIGN | 3,259,957* | July 10, 2007 |
| ALIGNTECH | 3,786,167 | May 4, 2010 |
| INVISALIGN | 2,409,473* | November 28, 2000 |
| INVISALIGN | 3,060,471* | February 21, 2006 |
| INVISALIGN | 3,191,195* | January 2, 2007 |
| INVISALIGN | 3,418,121* | April 29, 2008 |
| INVISALIGN | 4,025,403 | September 13, 2011 |
| INVISALIGN TEEN | 3,627,894 | May 26, 2009 |
| INVISALIGN TEEN & Design | 3,661,970 | July 28, 2009 |
| INVISALIGN ASSIST | 3,734,867 | January 5, 2010 |
| INVISALIGN & Design | 3,911,988 | January 25, 2011 |

True and correct copies of the trademark registration certificates for the above listed trademarks are attached as **Exhibit A** to this Complaint.

15. Align's registrations listed above are valid, subsisting, and in full force and effect. A number of the registrations listed above are also incontestable (as indicated above with an asterisk * alongside the Registration No.) pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serve as conclusive evidence of the validity of Align's ALIGN and INVISALIGN marks, pursuant to 15 U.S.C. § 1115(b).

16. The ALIGN Trademark has acquired distinctiveness and has become exclusively associated with Align as a result of its long and widespread use in commerce.

17. The INVISALIGN Trademark is fanciful and therefore inherently distinctive.

18. Moreover, the INVISALIGN Trademark is famous and widely recognized by the general consuming public of the United States. The INVISALIGN Trademark became famous long before Defendants adopted the trade name and trademark ALIGNINLINE and arranged for registration of the domain names <aligninline.com> and <inlinealign.com>.

19. The INVISALIGN Trademark is famous by virtue of Align's extensive advertising of the trademark over the last decade throughout the United States. Align has had sales of products under the INVISALIGN Trademark in the billions of dollars and has enlisted millions of patients who have used its INVISALIGN products.

20. Align provides extensive information on its products and services for dentists and consumers at <aligntech.com> and <invisalign.com>, including how the INVISALIGN systems works, success stories, reasons for choosing INVISALIGN, and how to find an INVISALIGN provider. Align registered <aligntech.com> and <invisalign.com> in 1997 and 1999 respectively, long before Defendants registered <aligninline.com> and <inlinealign.com>.

**Defendants' Unlawful Conduct**

21. Defendants are direct competitors of Align. On their website, they claim that they have developed a unique system for orthodontic teeth straightening that includes clear, removable dental appliances. Upon information and belief, Defendants started using the ALIGNINLINE trade name and trademark in connection with their alleged orthodontic teeth straightening system (the "ALIGNINLINE Goods and Services") in or around 2012, more than ten years after Align first began using ALIGN and INVISALIGN.

22. Upon information and belief, prior to adopting the trade name and trademark ALIGNINLINE, Yenin was a dental technician at one of Align's competitors, offering clear, removable braces. Yenin therefore must have become aware of the ALIGN and INVISALIGN Trademarks while working in the field and before he adopted the ALIGNINLINE trade name and trademark.

23. Upon information and belief, Defendants promote, advertise, and sell the ALIGNINLINE Goods and Services through the same marketing channels as Align, including

allegedly through dentists and orthodontists and through the internet via their company website at <aligninline.com>. Attached hereto as **Exhibit B** is a true and correct copy of a printout from Defendants' website showing use of the trade name and trademark ALIGNINLINE in connection with the ALIGNINLINE Goods and Services.

24. On or about June 6, 2012, the domain name <aligninline.com> was registered on behalf of Defendants by HostGator.com LLC, a web hosting company and domain registrar. HostGator.com LLC is listed as the "Registrant Organization" and Adam Farrar, the CEO of HostGator.com LLC, is listed as the "Registrant Name" on the WHOIS record for <aligninline.com>. Upon information and belief, Defendants have control of the domain <aligninline.com>, including the ability to transfer the domain, and they are actively using the domain name in connection with their website to promote their ALIGNINLINE Goods and Services. A true and correct copy of the WHOIS record for <aligninline.com> is attached as **Exhibit C**.

25. On or about June 6, 2012, the domain name <inlinealign.com> was registered by Yenin. Yenin was listed as the registrant of record on the WHOIS record for the domain as of June 8, 2014. The domain was up for renewal on June 6, 2014, but, upon information and belief, Yenin did not renew the domain with his registrar by that date. The domain is now in the "redemption period" but Yenin may still recover the domain; he is the only one who can redeem the domain at this time. A true and correct copy of the WHOIS record for <inlinealign.com> according to DomainTools as of June 8, 2014 and August 5, 2014 is attached as **Exhibit D**.

26. On February 27, 2014, Align sent a letter to Yenin alerting him of Align's trademark rights, and of his violations of the Lanham Act as a result of his adoption of ALIGNINLINE as his trade name, trademark, and domain name. A true and correct copy of the cease and desist letter is attached as **Exhibit E**.

27. On or around April 11, 2014, Align received a written response from Yenin to its cease and desist letter. In his written response, Yenin offered to sell <aligninline.com> and <inlinealign.com> to Align for five hundred thousand dollars ($500,000), and refused to cease using them unless Align paid his demand. A true and correct copy of Yenin's written response is

attached as **Exhibit F**. Yenin's exorbitant demand demonstrates his bad faith intent to profit from his illegal and infringing use of Align's trademarks.

28. As of the filing of this Complaint, Defendants have not ceased use of ALIGNINLINE as their trade name or trademark and they have not affirmatively cancelled the domain registrations for <aligninline.com> or <inlinealign.com> or agreed to transfer them to Align.

29. Defendants have never been authorized by Align to use the ALIGN Trademark or any variations thereof, including ALIGNINLINE or INLINEALIGN, and have never been granted authority to assert or suggest any affiliation with or endorsement by Align. Align has never cooperated with Defendants in any manner, and in particular has never worked with Defendants in connection with a dental orthodontic system.

30. Defendants' use of the ALIGN Trademark as part of their trade name and trademark, and in the domain names <aligninline.com> and <inlinealign.com> is confusingly similar to Align's ALIGN and INVISALIGN Trademarks and the domain names used by Align, including <aligntech.com> and <invisalign.com>. In particular, the incorporation of ALIGN into ALIGNINLINE and INLINEALIGN may deceive consumers into believing that products or services offered by Defendants using ALIGNINLINE and INLINEALIGN are part of Align's INVISALIGN system or are new product or service offerings from Align, thus creating confusion. The incorporation of ALIGN into ALIGNINLINE and INLINEALIGN may also falsely suggest sponsorship or endorsement of the ALIGNINLINE Goods and Services by Align so that Yenin is trading off of the goodwill of Align.

## FIRST CAUSE OF ACTION

**(Unfair Competition and False Endorsement, 15 U.S.C. §§ 1114(1), 1125(a))**

31. Align incorporates herein the allegations in paragraphs 1 through 30, as set forth above.

32. Align is the sole owner of the registered ALIGN and INVISALIGN Trademarks, as set forth above.

///

33. Align has never licensed or otherwise authorized Defendants to use the ALIGN or INVISALIGN Trademarks or to incorporate the ALIGN Trademark into ALIGNINLINE or INLINEALIGN.  Align has never licensed or otherwise authorized Defendants to assert or imply any endorsement by or affiliation with Align.

34. Defendants have used in commerce, without Align's consent, ALIGNINLINE as a trademark and trade name and have registered and/or used the domain names <aligninline.com> and <inlinealign.com>, which uses and registrations are likely to cause confusion with respect to the source and origin of Defendants' products and services and are likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Align with Defendants and/or the sale of their products and services.

35. The ALIGNINLINE and INLINEALIGN Trademarks are colorable imitations of the ALIGN and INVISALIGN Trademarks and are used in connection with dental and orthodontic products and services that are identical to those offered by Align.  Such use is likely to cause confusion, to cause mistake, or to deceive.

36. Defendants have willfully and intentionally adopted and used the trade name and trademark ALIGNINLINE, and registered, used, and/or offered for sale domain names that are confusingly similar to Align's ALIGN and INVISALIGN Trademarks, with the intent of causing confusion and mistake and of misleading and deceiving the public generally and Align's customers in particular into generally believing that Defendants' products and services are associated with or endorsed by Align.

37. Defendants' acts constitute unfair competition and false endorsement in violation of 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a).  As a direct and proximate result of Defendants' unlawful acts as set forth above and the false impressions created by Defendants' actions, Align has suffered and will continue to suffer injury to its business and goodwill.

38. Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein.  Align is further entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein.  Align is at present unable to ascertain the full extent

of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

39. Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

40. Align has no adequate remedy at law to compel Defendants to cease their wrongful acts. Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the infringing use of ALIGNINLINE, Align will continue to suffer irreparable harm.

41. Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or participation with them from engaging in any further such acts of unfair competition and false endorsement in violation of 15 U.S.C. § 1125.

**SECOND CAUSE OF ACTION**

**(Trademark Infringement, 15 U.S.C. 1114 et. seq.)**

42. Align incorporates herein the allegations in paragraphs 1 through 41, as set forth above.

43. Align is the sole owner of the registered ALIGN and INVISALIGN Trademarks, as set forth above.

44. Align has never licensed or otherwise authorized Defendants to use the ALIGN or INVISALIGN Trademarks or to incorporate the ALIGN Trademark into Defendants' trademarks, trade names, or domains. Align has never licensed or otherwise authorized Defendants to assert or imply any endorsement by or affiliation with Align.

45. Defendants have used in commerce, without Align's consent, ALIGNINLINE as a trademark and trade name and have registered and/or used the domain names <alignInline.com> and <inlinealign.com>, which uses and registrations are likely to cause confusion with respect to the source and origin of Defendants' products and services and are likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Align with Defendants and/or the sale of their products and services.

46.     The ALIGNINLINE and INLINEALIGN Trademarks are colorable imitations of the ALIGN and INVISALIGN Trademarks and are used in connection with dental and orthodontic products and services that are identical to those offered by Align. Such use is likely to cause confusion, to cause mistake, or to deceive.

47.     Defendants have willfully and intentionally adopted and used the trade name and trademark ALIGNINLINE, and registered, used, and offered for sale domain names that are confusingly similar to Align's ALIGN and INVISALIGN Trademarks, with the intent of causing confusion and mistake and of misleading and deceiving the public generally and Align's customers in particular into generally believing that Defendants' products and services are associated with or endorsed by Align.

48.     Defendants' acts constitute infringement of the ALIGN and INVISALIGN Marks in violation of 15 U.S.C. § 1114.

49.     As a direct and proximate result of Defendants' unlawful acts as set forth above, Align has suffered and will continue to suffer injury to its business and goodwill.

50.     Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein. Align is further entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein. Align is at present unable to ascertain the full extent of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

51.     Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

52.     Align has no adequate remedy at law to compel Defendants to cease their wrongful acts. Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the infringing use of ALIGNINLINE, Align will continue to suffer irreparable harm.

53.     Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or

participation with them from engaging in any further such acts of infringement in violation of 15 U.S.C. § 1125.

**THIRD CAUSE OF ACTION**

**(Trademark Dilution, 15 U.S.C.§ 1125(c))**

54. Align incorporates herein the allegations in paragraphs 1 through 53, as set forth above.

55. The INVISALIGN Trademark is famous and distinctive, and is entitled to protection against dilution.

56. Defendants commenced use of ALIGNINLINE as a trade name and trademark and registered the domain names <aligninline.com> and <inlinealign.com> long after the INVISALIGN Trademark became famous.

57. Defendants' use of ALIGNINLINE as a trade name and trademark and their registration and/or use of the domain names <aligninline.com> and <inlinealign.com> are likely to dilute the distinctive quality of the INVISALIGN Trademark in violation of 15 U.S.C. § 1125(c).

58. As a direct and proximate result of Defendants' unlawful acts as set forth above, Align has suffered and will continue to suffer injury to its business and goodwill.

59. Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein. Align is further entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein. Align is at present unable to ascertain the full extent of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

60. Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

61. Align has no adequate remedy at law to compel Defendants to cease their wrongful acts. Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the dilutive use of ALIGNINLINE, Align will continue to suffer irreparable harm.

62. Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or participation with them from engaging in any further such acts of dilution in violation of 15 U.S.C. § 1125.

**FOURTH CAUSE OF ACTION**

**(Violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))**

63. Align incorporates herein the allegations in paragraphs 1 through 62, as set forth above.

64. As alleged above, Defendants have registered the domain names <alignonline.com> and <inlinealign.com> without Align's authorization and with a bad faith intent to profit from Align's ALIGN and INVISALIGN Trademarks. The domain names <aligninline.com> and <inlinealign.com> are confusingly similar to the ALIGN and INVISALIGN Trademarks and dilute the distinctive quality of the INVISALIGN Trademark.

65. Align's ALIGN and INVISALIGN Trademarks were distinctive and/or famous at the time Defendants registered the domain names and remain distinctive today.

66. Defendants registered the domain names <aligninline.com> and <inlinealign.com> with the knowledge that the domain names were confusingly similar to Align's ALIGN and INVISALIGN Trademarks. Defendants have continued to use and/or maintain the domain registration for <aligninline.com> even after Align sent Yenin a letter regarding Align's prior rights.

67. Yenin's adoption and use of domain names that incorporate and are confusingly similar to Align's trademarks, in order to promote and sell competing products and services, his refusal to cease the use of these domains, and his demand that Align purchase these domains for the exorbitant amount of $500,000 demonstrate his bad faith intent to profit from the ALIGN and INVISALIGN Trademarks.

68. As a direct and proximate result of Defendants' acts alleged herein, Align has been and continues to be injured in its business and property, and has sustained and will continue to

///

sustain substantial damage to its business, goodwill, and reputation in an amount not presently known.

69. Align is entitled to the maximum statutory damages, pursuant to 15 U.S.C. § 1117(d), in the amount of $100,000, for each act of Defendants' cybersquatting.

70. Align has no adequate remedy at law. Unless Defendants are preliminary and permanently enjoined from committing these unlawful acts as set forth above, and the <aligninline.com> and <inlinealign.com> domains registered by Defendants are ordered transferred to Align, Align will continue to suffer irreparable harm. Align is therefore entitled to injuctive relief against the continued use of the domains registered by Defendants.

71. Align is entitled to the transfer of Defendants' domain names <aligninline.com> and <inlinealign.com> under 15 U.S.C. § 1125(d)(1)(C).

## PRAYER FOR RELIEF

Align requests the following relief as a result of the unlawful acts of Defendants described herein:

A. A judgment in favor of Align on all of the claims for relief pleaded herein.

B. That Defendants, and all persons and entities acting in concert with them, be preliminarily and thereafter permanently enjoined and restrained, pursuant to the Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116, from using in any manner in connection with their websites, domain names, or the services or goods offered or sold by them, or in connection with any advertising or promotions for such businesses, services, or goods, the ALIGNINLINE trade name and trademark or any other trade name or trademark containing the ALIGN or INVISALIGN Trademarks;

C. An order requiring Defendants, and all persons and entities acting in concert with them, to cease using any domain name containing the ALIGN and INVISALIGN Trademarks, and to transfer ownership of any such domain names to Align that are under their control, including, but not limited to, <aligninline.com> and <inlinealign.com>;

///

///

D. That Defendants, and all persons and entities acting in concert with them, be preliminarily and thereafter permanently enjoined and restrained from registering any domain names containing the ALIGN and INVISALIGN Trademark in the future;

E. An award to Align of compensatory, consequential, and statutory damages flowing from Defendants' wrongful acts, as described herein.

F. An order requiring Defendants to disgorge any and all revenues, gains, profits, and advantages obtained and to be obtained by Defendants as a result of Defendants' unlawful acts as described herein.

G. An order finding that this case is exceptional and awarding enhanced damages and attorney's fees pursuant to 15 U.S.C. §1117(a).

H. An order that Align recover its costs from Defendants.

I. An order awarding Align prejudgment and postjudgment interest.

J. An order for such other and further relief as the Court may deem just and appropriate.

Dated: August 15, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ James M. Chadwick*

JAMES M. CHADWICK
HAROLD J. MILSTEIN
CHELSEAA BUSH
TENAYA M. RODEWALD
Attorneys for Plaintiff
ALIGN TECHNOLOGY, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff Align Technology, Inc. hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

Dated: August 15, 2014

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *_/s/ James M. Chadwick_*

JAMES M. CHADWICK
HAROLD J. MILSTEIN
CHELSEAA BUSH
TENAYA M. RODEWALD
Attorneys for Plaintiff
ALIGN TECHNOLOGY, INC.